## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMAf, a
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STARLA FRANKLIN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:21-cv-86-CWB** |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.   Introduction and Administrative Proceedings

Starla Janene Franklin ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on February 7, 2019 wherein she alleged disability onset as of July 13, 2018 due to severe lower back pain and osteoarthritis.  (Tr. 17, 22, 68-69, 71, 79, 207).[2]  The claim was denied at the initial level on April 25, 2019, and Plaintiff requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 17, 76, 79-80, 87-89).  The ALJ subsequently heard the case on August 11, 2020, at which time testimony was given by Plaintiff (Tr. 17, 34-56, 65) and by a vocational expert (Tr. 17, 56-65).  The ALJ took the matter under advisement and issued a written decision on August 26, 2020 that found Plaintiff not disabled.  (Tr. 17-29).

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

2.  The claimant has not engaged in substantial gainful activity since July 13, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy; degenerative disc disease of the cervical spine with myelopathy; steatosis of liver; gastroesophageal reflux disease; and obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant would require the ability to change positions for 1-2 minutes every hour for relief of postural discomfort but would be able to remain on task during position change; can perform only occasional pushing or pulling with the bilateral upper extremities and bilateral lower extremities; can never climb a ladder, rope or scaffold, crouch, kneel or crawl; can occasionally climb ramps and stairs, balance and stoop; avoid overhead reaching with the bilateral upper extremities; can perform frequent other reaching, handling, fingering and feeling with the bilateral upper extremities; avoid work at unprotected heights and around hazardous machinery; and avoid use of vibratory tools or vibrations in general.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on September 11, 1975 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

      11. The claimant has not been under a disability, as defined in the Social Security Act, from July 13, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19, 21, 27-28, 29).  On December 8, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

      Plaintiff now asks the court to reverse the final decision and to remand the case for a new hearing and further consideration.  (Doc. 16 at p. 15).  The court construes Plaintiff's supporting brief (Doc. 16) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 17) as a competing motion for  summary judgment.  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge (Docs. 5, 6), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. §§ 405(g).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.    Standard of Review and Regulatory Framework

      The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a

reviewing court] must affirm if the decision reached is supported by substantial evidence.")
(citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the
decision was not supported by substantial evidence or that the proper legal standards were not
applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted
simply because the court itself would have reached a result contrary to that of the factfinder.  *See*
*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its
review, however, the court must look beyond those parts of the record that support the decision,
must view the record in its entirety, and must take account of evidence that detracts from the
evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986);
*see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a
person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable
> physical or mental impairment which can be expected to result in death or
> which has lasted or can be expected to last for a continuous period of not less than
> 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential
evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set
forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.  42 U.S.C. § 423(d)(3).

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to

---

[4] *McDaniel* is a Supplemental Security Income case. Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

speak English, educational deficiencies, and lack of job experience.  Each factor can independently

limit the number of jobs realistically available to an individual, and combinations of these factors

yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

## III.   Issues on Appeal

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by failing to properly

evaluate Plaintiff's pain; and (2) whether the ALJ's reliance on flawed vocational expert testimony

warrants remand.  (Doc. 16 at p. 1).

## IV.   Discussion

### A.    The ALJ's Evaluation of Plaintiff's Subjective Statements of Pain

Plaintiff argues that the ALJ failed to properly evaluate her pain.  (Doc. 16 at p. 10).

Specifically, Plaintiff argues that she showed evidence of an underlying medical condition and that

her degenerative disc disease of the lumbar spine with radiculopathy and degenerative disc disease

of the cervical spine with myelopathy could reasonably be expected to give rise to her claimed

pain.  (*Id*. at pp. 6-8).  The Commissioner contends that the ALJ followed the regulations and

Eleventh Circuit law and articulated explicit and adequate reasons for discounting Plaintiff's

subjective complaints of disabling symptoms.  (Doc. 17 at p. 5).

In determining whether a claimant is disabled, the claimant's symptoms, including pain,

are considered to the extent they are reasonably consistent with objective medical evidence and

other evidence.  20 C.F.R. § 404.1529(a).  The Commissioner will consider a claimant's statements

about his or her symptoms, such as pain, and any description that the claimant's medical sources

or nonmedical sources may provide about how the symptoms affect the claimant's activities of

daily living and ability to work.  *Id*.  However, a claimant's statements about pain or symptoms

alone are not enough to establish the existence of a physical or mental impairment or disability.

*Id.*; SSR 16-3p, 2017 WL 5180304 at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596 at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  The regulations set out a two-step process for the evaluation of subjective complaints such as pain.  *Id.*; SSR 16-3p, 2017 WL 5180304 at *3.  To establish a disability based on testimony of pain and other symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or pain, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms or pain.  *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503 at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304 at *3. "Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964 at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304 at *2-3.[5]

---

[5] In her brief (Doc. 16 at pp. 6-7), Plaintiff refers to the pain standard articulated in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), "which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*per curiam*). "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" *Id.* (quoting *Holt*, 921 F.2d at 1223). "The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p sets forth." *Harris v. Kijakazi*, No. 2:21-CV-256, 2023 WL 2250474 at *7 n.8 (M.D. Ala. Feb. 27, 2023) (citation omitted). "If a claimant satisfies this test, the ALJ must then determine the extent to which the claimant's symptoms limit his capacity for work." *Stinson v. Kijakazi*, 565 F. Supp. 3d 1219, 1229 (M.D. Ala. 2021).

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work.  SSR 16-3p, 2017 WL 5180304, at *3-4; 20 C.F.R. § 404.1529(a), (c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347 at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *8-9; 20 C.F.R. § 404.1529(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(c)(4). "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision."  *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335, at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations" but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole)).  If the ALJ discredits Plaintiff's subjective statements, the ALJ

"must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058 at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 153158 at *2 (11th Cir. May 16, 2022) (citing *Foote*,                67 F.3d at 1562).  "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260 at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

Here, the ALJ's assessment of Plaintiff's pain and other symptoms was supported by substantial evidence.  The ALJ properly set forth the subjective pain standard, citing both the Social Security Administration's regulation and the Eleventh Circuit's standard for evaluating subjective pain:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's

work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(Tr. 21-22).

The ALJ then discussed Plaintiff's alleged impairments and allegations of pain and other symptoms. (Tr. 22-23). The ALJ noted that in Plaintiff's function reports she alleged that she had pain in her hands, wrists, arms, shoulders, legs, and back on a daily basis, that on a typical day she was unable to function more than necessary to assist her children with school, that her sleep was limited due to pain, that she could never bend due to pain, and that she reported using a back brace and hand brace. (Tr. 22, 216-17, 221-22, 225). As to Plaintiff's testimony at the ALJ hearing, the ALJ noted that she testified that she had some limitation due to symptoms in her legs and hands that restricted her to driving shorter distances, that she used a cane to assist with ambulation, that she had a wrap that went around her legs to support her hip, that she elevated her legs to alleviate pain and swelling, that she stopped working because her medications inhibited her ability to focus in combination with her pain, that she experienced pain with an average intensity between a 7 and 8 out of 10, that she experienced pain constantly on a daily basis, that she had bilateral leg pain, that her neck pain radiated to her shoulder, that she was never comfortable while sitting, that she could sit for about 20 minutes before needing to shift position, that she could stand for 30 minutes before needing to rest, that she experienced difficultly walking during shopping excursions, that she could not reach above her head, and that she had significant limitations to bending, squatting, kneeling, and crouching. (Tr. 22-23, 42, 45-48, 52-53).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 23). However, in accordance with the SSA's rules

and regulations, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of the[] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision":

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the following medical evidence: the objective imaging of the claimant's lumbar and cervical spine which show mild findings, the results of the nerve condition studies which reveal no active radiculopathy, the physical exam findings from her primary care provider which are generally normal, and the conservative nature of her orthopedic and pain management care throughout the period at issue.

(Tr. 23). "In other words, the administrative law judge found that [Plaintiff's] condition could reasonably be expected to give rise to some pain, but it did not 'give rise to the *claimed* pain.'" *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. May 17, 2021) (emphasis in original) (explaining that the ALJ judge found that, although the objective evidence showed that plaintiff's impairments could reasonably be expected to cause some pain, the intensity of the pain plaintiff testified to experiencing was inconsistent with the medical evidence). The ALJ then thoroughly discussed the record as a whole and gave detailed reasons, supported by the record, for discounting Plaintiff's subjective complaints, pursuant to SSR 16-3p, 20 C.F.R. § 404.1529(a)-(c)(3), and the relevant case law. *See Robinson v. Acting Comm'r of Soc. Sec.*, 766 F. App'x 811, 816-17 (11th Cir. 2019) (discussing the pain standard and applying 20 C.F.R. § 404.1529(c)(1), (3) to the facts of the case); *Ramsey v. Comm'r of Soc. Sec.*, No. 2:22-CV-75, 2023 WL 2013522 at *3-4 (M.D. Fla. Feb. 15, 2023) (addressing and applying the legal obligations imposed by 20 CFR § 404.1529(a), (b), (c) and SSR 16-3p); *Pennington v. Kijakazi*, No. 3:20-CV-434, 2022 WL 816076 at *5 (M.D. Ala. Mar. 17, 2022).

The ALJ noted that in June 2018, a month prior to the alleged onset date, Plaintiff's musculoskeletal examination conducted at her primary care provider's office was grossly

unremarkable and that she had normal gait, stance, and posture, and that in August 2018 she returned to her primary care provider with a specific complaint of back pain but musculoskeletal examination findings were again grossly normal.  (Tr. 23-24, 298, 301).  The ALJ stated that Plaintiff returned to her orthopedic care providers in October 2018, complaining of severe pain rated as a 7 out of 10, and numbness, tingling, and weakness in her hands and legs.  (Tr. 24, 327). The ALJ noted that this examination showed that Plaintiff had benign neurological examination findings but that she had limited range of motion and was exquisitely and dramatically painful to palpation of her back.  (Tr. 24, 327).  Plaintiff was prescribed Meloxicam for the pain, and epidural injections were ordered.  (Tr. 24, 327).  The ALJ reported that Plaintiff's orthopedist stated that she should be rescheduled on an as needed basis, that she did not require surgery given her very benign appearance on an MRI, that x-rays were benign as well with well-preserved disc spaces, and that she was diagnosed with low back pain and lumbar radiculopathy.  (Tr. 24, 327).  The ALJ cited the diagnostic impression, medical imaging, and conservative treatment in support of the conclusion that no greater restrictions were warranted to address Plaintiff's lumbar disorder. (Tr. 24).

The ALJ reported that in January 2019 Plaintiff rated the intensity of her pain as a 5 out of 10 and described severe muscle spasms.  (Tr. 24, 325).  The ALJ noted that on examination Plaintiff had dramatic pain presentation but was otherwise neurologically intact.  (Tr. 24, 325). The ALJ stated that Plaintiff's orthopedist did not recommend surgery, ordered an updated MRI and nerve conduction studies, and prescribed her Robaxin.[6]  (Tr. 24, 325).  The ALJ cited Plaintiff's February 2019 MRI of her lumbar spine that revealed minimal bulging of the L3-L4

[6] Methocarbamol or Robaxin is used to treat muscle spasms/pain and is usually used along with rest, physical therapy, and other treatment. https://www.webmd.com/drugs/2/drug-11197/robaxin-oral/details (last viewed May 8, 2023)

disc not significantly compressing the lumbar thecal sac and the February 2019 nerve conduction studies that showed evidence of no active chronic right lower extremity L5-S1 radiculopathy and no evidence of left lower extremity radiculopathy.  (Tr. 24, 341, 345).  The ALJ noted that Plaintiff's orthopedist told her that the updated MRI was very benign, showing well preserved disc spaces, no significant herniation, and no stenosis, that her nerve conduction study showed no active radiculopathy, and that her orthopedist did not recommend surgery or further injections.  (Tr. 24, 320-21).  The ALJ further observed that the diagnostic impression of Plaintiff's orthopedist, the physical examination findings from the treatment notes, and the conservative treatment plan all supported the determination that no greater restrictions were warranted.  (Tr. 24).

The ALJ noted that in March 2019 Plaintiff denied musculoskeletal symptoms.  (Tr. 24, 363).  The ALJ stated that in August 2019 Plaintiff reported that her joint pain was improving but not at baseline, her neuropathic pain presented when she was upset, and her pain was becoming a major complaint.  (Tr. 25, 386).  The ALJ cited physical examination findings that showed that Plaintiff ambulated normally, that she had full range of motion of her neck, that she had normal tone and motor strength, that her gait was normal, that her neurological examination findings were normal, and that her back was nontender.  (Tr. 25, 387).

The ALJ considered records from September 2019, which indicated that Plaintiff complained of radiating low back pain, joint pain in her hands, and right upper quadrant pain and that she rated the intensity of her pain as above a 6 out of 10.  (Tr. 25, 402).  Plaintiff's physical examination showed that she had good range of motion of her neck, that she had tenderness to palpation, that low back range of motion elicited pain, that she was tender to palpation, that muscle spasm was noted, and that straight leg raise testing was negative bilaterally.  (Tr. 25, 402).  The ALJ noted that Plaintiff received bilateral sacroiliac injections in October 2019 and that two weeks

later she reported significant upper extremity limitations including bilateral upper extremity weakness and near constant pain in her right arm but that her physical examination indicated she had wide gait walk and good grip strength bilaterally.  (Tr. 25, 396, 400).

The ALJ cited a November 2019 MRI which revealed a disc protrusion at C4-C5 mildly flattening the right anterior spinal cord, a small disc protrusion at C5-C6 with mild flattening of the right anterior spinal cord, and an annular tear of the left lateral recess at C6-C7.  (Tr. 25, 393, 435).  The ALJ noted that Plaintiff described her upper extremity pain as a dull, heavy feeling and also numbness in her hands and headaches.  (Tr. 25, 393).  The ALJ stated that Plaintiff's physical examination revealed that she was tender to palpation of the neck and low back, that her straight leg raise testing was positive, that she was diagnosed with cervical disc disorder with myelopathy, and that she was referred to chiropractic care.  (Tr. 25, 393-94).  The ALJ further noted that a November 2019 physical examination by Plaintiff's primary care provider showed that she ambulated normally, that she had full range of motion of her neck, that she had normal tone and motor strength, that her gait was normal, that her neurological examination findings were normal, that her back was nontender, and that she was prescribed Tizanidine for chronic back pain and Gabapentin for neuropathic symptoms.  (Tr. 25, 379-80).  The ALJ concluded that the mild nature of the pathology, Plaintiff's good grip strength bilaterally, the normal musculoskeletal examination findings, and the conservative nature of the treatment recommended by her pain management physician supported the determination regarding Plaintiff's restrictions.  (Tr. 25-26, 393-94, 396).

The ALJ stated that at a December 18, 2019 visit with her pain management physician Plaintiff rated the intensity of her pain as an 8 out of 10, that she was prescribed Lidocream for her cervical disc disorder, and that her pain management physician reiterated his impression that she needed to treat this condition conservatively.  (Tr. 26, 390-91).  The ALJ noted that from

14

January 2020 through at least March 2020 Plaintiff received chiropractic care and that while overall she showed some symptom improvement her progress was slower than her care provider had expected.  (Tr. 26, 414-44).  The ALJ also noted that in May 2020 Plaintiff rated the intensity of her pain as 9 out of 10 and that her physical examination indicated that she could ambulate normally, that she had pain on range of motion of the neck, that she had abdominal tenderness, that she had normal motor strength and tone, that she had no tenderness in her extremities, that she had normal gait, and that she had no neurologic abnormality.  (Tr. 26, 448, 452-53).

The ALJ further considered a November 2018 functional capacity evaluation where the examiner expressed the impression that there were discrepancies between Plaintiff's test results and observations, which called into question her effort during the evaluation.  (Tr. 26, 274-76). The ALJ also considered the prior administrative medical finding of the State agency medical consultant who opined that Plaintiff was capable of performing less than the full range of light work.  (Tr. 26, 73-75).  The ALJ did not find this opinion persuasive because it was inconsistent with the updated medical evidence of record showing that Plaintiff had degenerative changes to her cervical spine.  (Tr. 26).  The ALJ also considered a March 2020 statement by a caregiver at Plaintiff's primary care office that was related to Plaintiff's functioning.  (Tr. 26).  In discounting some of the restrictions as inconsistent or poorly supported, the ALJ cited that Plaintiff's primary care treatment notes generally showed normal musculoskeletal examination findings, that the imaging of her lumbar spine was grossly benign, that the nerve conduction studies showed no evidence of active radiculopathy, that she was observed to have good bilateral grip strength, and that the imaging of her cervical spine showed mild pathology.  (Tr. 27, 341, 345, 379, 396, 435).

Plaintiff argues that the ALJ's assessment of her pain was not supported by substantial evidence, citing to evidence in the medical record, some of which predates her alleged onset date.

(Doc. 21 at pp. 2-3, Tr. 334, 390, 436).   However, the ALJ's decision reflects that the ALJ thoroughly addressed Plaintiff's subjective statements in accordance with 20 C.F.R. § 404.1529(c)(1)-(4).   The ALJ considered the entire record in evaluating Plaintiff's subjective statements and carefully detailed the medical proof used in finding that Plaintiff's statements were not entirely consistent with the medical evidence.  *See Bloodworth v. Kijakazi*, No. 3:21-CV-120, 2023 WL 2242313 at *5-6 (M.D. Ala. Feb. 27, 2023) (noting the ALJ's exhaustive review of plaintiff's testimony and her medical records, the court found that the ALJ properly evaluated the plaintiff's subjective complaints, as the ALJ explicitly discussed the "objective medical evidence," "treatment history," "response to medication," and "daily activities," and that substantial evidence supported the ALJ's treatment of plaintiff's subjective testimony given that the complaints were not consistent with the evidence as a whole); *Hilton v. Kijakazi*, No. 2:20-CV-521, 2022 WL 1262550 at *4 (M.D. Ala. Apr. 28, 2022) (where the ALJ relied on objective medical evidence, medical opinions, and plaintiff's daily activities in discounting plaintiff's subjective symptom testimony, the court found that these reasons were consistent with and supported by the record and therefore provided substantial evidence to discount plaintiff's subjective symptom testimony).

"[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms."  *Turner*, 2021 WL 3276596 at *9; 20 C.F.R. § 404.1529(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled.").  Here, the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record, and the ALJ sufficiently cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole.  Credibility determinations are the province of the ALJ and will not be disturbed by a clearly articulated credibility finding supported by substantial evidence.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (explaining

that the appropriate question for a reviewing court "is not ... whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."). "To the extent Plaintiff disagrees with the ALJ's interpretation of th[e] evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679 at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV- 181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell*, 771 F.3d at 782 ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted). Accordingly, the court finds that the ALJ's evaluation of Plaintiff's subjective statements was supported by substantial evidence.

**B.      The ALJ's Reliance on Flawed Hypothetical Question to VE**

Plaintiff contends that the ALJ committed reversible error by relying upon flawed VE testimony at step five of the sequential analysis. (Doc. 16 at p. 10). Plaintiff argues that because of the VE's mistakes, substantial evidence could not support the ALJ's conclusion that a significant number of representative jobs that Plaintiff could perform existed in the national economy. (*Id*. at p.11). The Commissioner contends that the ALJ posed a hypothetical question to the VE that incorporated all of the limitations that were eventually included in the RFC finding, as required for the testimony to constitute substantial evidence. (Doc. 17 at pp. 7-8). The Commissioner asserts that the relevant inquiry before the court is whether the VE's testimony constituted substantial evidence supporting the ALJ's decision, not whether substantial evidence supported the VE's testimony. (*Id*. at p. 9). The Commissioner also argues that the court should not consider any data Plaintiff references in her brief, as she did not present such data at the hearing

and did not object to the VE's testimony.  (*Id*. at p. 13).  Lastly, the Commissioner contends that Plaintiff inaccurately suggests that the VE was required to explain the methodology for calculating job numbers.  (*Id*. at p. 14).

At the fifth step of the sequential evaluation process, the ALJ must determine that "there is other work available in significant numbers in the national economy that the claimant can perform."  *Thomas v. Comm'r of Soc. Sec.*, 497 F. App'x 916, 919-20 (11th Cir. 2012); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).  Under Title II, "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1) ("Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).").  The regulations, much like the statute, provide that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical or mental abilities and vocational qualifications."  20 C.F.R. § 404.1566(b).  The regulations clarify that "[i]t does not matter whether ... [w]ork exists in the immediate area in which [the claimant] live[s], whether a "specific job vacancy exists," or if the claimant "would be hired if [the claimant] applied for work." 20 C.F.R. § 404.1566(a).  Therefore, a claimant is considered "not disabled" if the claimant "remain[s] unemployed because of ... [la]ck of work in [the claimant's] local area."  20 C.F.R. § 404.1566(c).  However, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy'."  20 C.F.R. § 404.1566(b).

"'Whether there are a significant number of jobs a claimant is able to perform with his

limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ].'" *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) (citation omitted). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence[.]" *Wilson*, 284 F.3d at 1227. "The ALJ may use a VE's testimony to determine whether the claimant has the ability to adjust to other work in the national economy." *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021); *Thomas*, 497 F. App'x at 919; 20 C.F.R. § 404.1566(e). "A VE 'is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'" *Id.* (quotation omitted). "'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (quoting *Wilson*, 284 F.3d at 1227). "The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number." *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005); *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019) ("The question, though, is not whether the expert's <u>testimony</u> is supported by substantial evidence.  It is whether the ALJ's <u>decision</u> is supported by substantial evidence.") (emphasis in original).

In addition, 20 C.F.R. § 404.1566(d) enumerates the sources of jobs data that the ALJ should consider, stating:

> When we determine that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where you live or in several regions of the country), we will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of—
>
> > (1) Dictionary of Occupational Titles, published by the Department of Labor ... .

20 C.F.R. § 404.1566(d); *see also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360

(11th Cir. 2018).  "The Dictionary of Occupational Titles [("DOT")] includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. § 404.1569.  "The DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number."  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1281 (11th Cir. 2020).  "Put simply, the critical inquiry at step five is whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments, and the ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE in making this determination."  *Washington*, 906 F.3d at 1360.

The ALJ in this case relied on a VE.  At the ALJ hearing, the ALJ posed a hypothetical question to the VE that incorporated all of the limitations that were ultimately included into the ALJ's RFC determination, and the VE testified that there were other jobs that an individual with those limitations could perform.  (Tr. 28, 60-62).  Specifically, the VE testified that an individual with those limitations could perform representative occupations such as document preparer, DOT 249.587-018, with "national employment figures approximately 2,973,000," final assembler, DOT 713.687-018, with "national employment figures approximately 231,000," and cuff folder, DOT 685.687-014, with "national employment figures approximately 350,000."  (Tr. 28, 60-61).

Here, substantial evidence supported the ALJ's finding that document preparer, final assembler, and cuff folder jobs existed in significant numbers in the national economy.  The ALJ properly made this determination based upon the VE's testimony in which the VE estimated that there were 2,973,000 document preparer jobs, 231,000 final assembler jobs, and 350,000 cuff folder jobs in the national economy.  *See Bacon*, 861 F. App'x at 320.  "[T]he Eleventh Circuit has 'never held that a minimum numerical count of jobs must be identified in order to constitute work that exists in significant numbers under the statute and regulations."  *B.S. v. Comm'r of Soc. Sec.*,

20

No. 1:20-CV-77, 2021 WL 1598210 at *3 (M.D. Ga. Apr. 23, 2021) (quoting *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 934 (11th Cir. 2015) (internal quotation marks omitted)) (finding 23,800 jobs in national economy constituted a "significant number"); *see Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (noting that the Eleventh Circuit has held that 78,000 jobs and other jobs with similar numbers amounted to "substantial evidence to support the ALJ's finding on step five"); *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) ("The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number. ... We have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers."); *Brooks*, 133 F. App'x at 671 (relying on the VE's testimony, "[t]he ALJ's finding that 840 polisher, document preparer, and bonder jobs constituted a significant number in the national economy [was] supported by substantial evidence"). The Eleventh Circuit has concluded, however, "that the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." *Atha*, 616 F. App'x at 934 (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)). Accordingly, the VE's testimony established that jobs existed in significant numbers in the national economy, and such evidence therefore constituted substantial evidence to support the ALJ's step-five finding.

The court's "review is limited to deciding whether the ALJ's decision was supported by substantial evidence and may not decide the facts anew." *Bacon*, 861 F. App'x at 320. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, --U.S.--, 39 S. Ct. 1148, 1154 (2019) (citation omitted). Thus, courts "must look only

to the evidence that was presented to the ALJ, and not evidence that was subsequently presented to the district court." *Bacon*, 861 F. App'x at 320.

Here, Plaintiff asserts that other evidence, *i.e.*, evidence not presented to the ALJ or the Appeals Council and not included in the administrative record, shows that the VE testified to vastly overstated numbers of representative jobs available in the national economy. (Doc. 16 at pp. 12-15; Tr. 56-65, 270-72). However, Plaintiff did not present any such evidence to the ALJ, nor did she object to the VE's testimony or inquire into the VE's methodology. (Tr. 56-65). Moreover, Plaintiff did not object that the VE was qualified to testify as a vocational expert. (Tr. 56). Because the VE's testimony is the only evidence regarding the number of jobs available in the record, the court is foreclosed from considering other evidence presented to it by Plaintiff. *See Bacon*, 861 F. App'x at 320; *Valdez*, 808 F. App'x at 1010 (where plaintiff did not present occupational employment statistics to the ALJ or object to the vocational expert's testimony and stipulated that the vocational expert was qualified to testify, the Eleventh Circuit, as a result, was foreclosed from considering the data in the occupational employment statistics on appeal and was therefore left with the vocational expert's testimony that plaintiff was able to work in 78,000 jobs in the national economy). Thus, the VE's testimony established that jobs existed in significant numbers in the national economy, and such uncontroverted testimony constituted substantial evidence to support the ALJ's step-five finding. *Bacon*, 861 F. App'x at 320-21; *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839-40 (11th Cir. 2012) (explaining that the "Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE [to] produce detailed reports or statistics in support of her testimony" and holding that the testimony constituted substantial evidence); *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (affirming the ALJ's reliance on VE testimony and observing that claimant did

not offer any evidence controverting the testimony or object to the testimony); *Davis v. Berryhill*, No. 17-cv-293, 2018 WL 2208432 at *7-8 (S.D. Ala. May 14, 2018) (citing that "'even assuming'" claimant presented information from Job Browser Pro that constituted substantial evidence, "'the data would only support an alternative finding regarding the number of jobs available for plaintiff in the economy'" and indicating that the ALJ's decision must be upheld even if the evidence were susceptible to more than one rational interpretation, one of which supported the ALJ's decision) (citation omitted).

Lastly, Plaintiff's reliance on *Goode*, 966 F.3d 1277, in support of her argument that the ALJ improperly relied on the VE's testimony (Doc. 16 at pp. 11-15) is misplaced.  In *Goode*, the VE testified that plaintiff could perform the job of bakery worker as described in the DOT and that there were 43,000 bakery worker jobs nationally and 1,000 bakery worker jobs regionally. 966 F.3d at 1279.  Plaintiff's attorney questioned the VE's methodology in reaching those numbers.  *Id*.  In determining the number of jobs, the VE looked to the Occupational Employment Quarterly ("OEQ") and the Occupational Employment Survey ("OES").  *Id*. at 1279, 1281.  The OEQ database does not compile data by DOT codes, but it does so through the Standard Occupational Classification ("SOC") system, which groups together detailed occupations with similar job duties.  *Id*. at 1281.  Because a single SOC group may contain multiple DOT occupations, the Bureau of Labor Statistics has published a crosswalk which provides the corresponding SOC group code for each DOT occupation.  *Id*.  The Eleventh Circuit found that the VE's testimony was significantly and fatally flawed for two reasons:

> First, the vocational expert used the wrong SOC group code to determine whether there are a significant number of jobs in the national economy that Ms. Goode could perform. Second, even if we overlooked this foundational problem, the numbers that the vocational expert cited from the wrong SOC group code substantially overstated the number of available bakery worker jobs that Ms. Goode could perform.

*Goode*, 966 F.3d at 1281-82.

In explaining the first error, the court stated that the VE based his testimony about available jobs on a specific DOT code and a mismatched SOC group code; the VE's "testimony was internally inconsistent, and created a critical void in the record." *Id*. at 1282-83. With respect to the second error, the court stated that the numbers provided by the VE were overstated in a very significant way, as the problem was that the job numbers from the SOC code were aggregate numbers for 65 separate DOT codes and that plaintiff was only capable of performing the job for only one of those DOT codes—that of bakery worker. *Id*. at 1283. The court stated that it was impossible to conclude, based on the existence of 43,000 jobs nationally and 1,000 jobs regionally for a group of 65 occupations, that all of those jobs existed for just one of those occupations. *Id*.

Unlike *Goode*, the VE here did not testify that the job numbers were calculated using data for SOC groups or any OES data or testify to any methodology used to calculate job numbers. The VE did not provide the wrong SOC code related to a DOT occupation, as there were no discussions of SOC codes. And the VE did not provide an incorrect DOT code. Further, there was no challenge or objection to the VE's testimony, and she did not challenge the testimony until her appeal to federal court. *See Bacon*, 861 F. App'x at 320 ("Thus, unlike *Goode*, this was a case in which the claimant failed to challenge or question the VE's methodology or job numbers."). Therefore, the VE's testimony that there were 2,973,000 document preparers jobs, 231,000 final assembler jobs, and 350,000 cuff folder jobs all available in the national economy "was neither clearly and unmistakably wrong on its face, nor was it internally inconsistent and incomplete." *Id*. at 320-21 (citing *Goode*, 966 F.3d at 1285-86).

Accordingly, based upon the analysis set forth above, the VE's testimony established that jobs existed in significant numbers in the national economy and therefore constituted substantial

evidence to support the ALJ's step-five finding.

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above,

the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 16) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 17) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 5th day of September 2023.

_____

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**